**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

HAROLD G. FOSSITT,                                              Case No. 1:12-cv-276

        Plaintiff,                                              Spiegel, J.
                                                               Bowman, M.J.

     v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Harold G. Fossitt filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed an application for disability insurance benefits ("DIB") in December 2007, alleging a disability onset date of August, 2004 based solely upon physical impairments. After his application was denied initially and on reconsideration, he requested a hearing de novo before an Administrative Law Judge ("ALJ"). In November 2010, an evidentiary hearing was held before ALJ Samuel A. Rodner. Plaintiff appeared with counsel and provided testimony, as did a vocational expert. (Tr. 28-68). On December 10, 2010, the ALJ denied Plaintiff's application in a written decision. (Tr. 15-23).

Because Plaintiff was 60 years old at the time of the hearing, with a high school education, he is considered "of advanced age" under Social Security regulations. (Tr. 22). Plaintiff previously worked as an electrician for more than 35 years, but had not engaged in substantial gainful activity since his alleged disability onset date. He is insured only through December 31, 2009, and therefore must prove that he became disabled prior to that date. (Tr. 17).

The ALJ determined that Plaintiff had severe impairments of "morbid obesity (not extreme), hypertension, and shortness of breath (etiology unclear)." (Tr. 17). However, none of those impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (*Id.*). Based upon the record presented, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, except, due to his "protuberant abdomen the claimant can stoop occasionally." (Tr. 18). Plaintiff is 5'11" and weighs 280 pounds. (Tr. 34). In addition, based the alleged side effects of his blood pressure medication and other impairments, the ALJ determined that Plaintiff "should avoid concentrated exposure to fumes, dusts, gases, poorly ventilated areas, hazardous machinery, and unprotected heights." (Tr. 18).

Although Plaintiff was not able to perform his past relevant work as an electrician, the vocational expert testified that an individual with the same vocational profile and RFC, during the relevant insured period, would have been able to perform "jobs that existed in significant numbers in the national economy," including the representative unskilled occupations of assembler, inspector, and hand packager. (Tr. 22-23). Therefore, the ALJ determined that Plaintiff was not disabled. (Tr. 23).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Defendant's final determination.  On appeal to this Court, Plaintiff contends that the ALJ erred: (1) by failing to find that Plaintiff's gout was a severe impairment; (2) by misconstruing medical evidence to find Plaintiff capable of "medium" work; and (3) by improperly assessing Plaintiff's credibility.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  See 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability.  *Felisky v.*

*Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.   If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Statement of Errors

### 1.  Failure to Find Gout a "Severe" Impairment

Plaintiff first complains that the ALJ erred in failing to find that his gout was a "severe" impairment.  The ALJ noted that Plaintiff "had a positive test for uric acid on June 4, 2008" with a test result of 9.60, above the normal range of 4.0 to 8.0.  However,

4

the ALJ stated that the test result was not "correlated by any substantiated evidence of clinical signs of gout. The claimant alleged arthritic joints all over, but there is no substantiated evidence of this as a severe impairment." (Tr. 17).

Plaintiff argues persuasively that the first statement was factually incorrect, insofar as the record reflects at least modest evidence of "clinical signs of gout." Defendant responds by rephrasing the ALJ's statement as one confirming that Plaintiff did not have "ongoing, substantial clinical abnormalities from gout." (Doc. 13 at 4). While the latter statement may well have been what the ALJ *meant*, it is not what is *written*.

Nevertheless, the undersigned finds no reversible error, because substantial evidence supports the ALJ's conclusion that Plaintiff's gout was not a severe impairment. In the alternative, the undersigned concludes that any error in finding Plaintiff's gout to be non-severe at Step 2 was harmless, because the ALJ determined that Plaintiff had other severe impairments, and therefore proceeded to the next steps of the sequential analysis, at which time both severe and non-severe impairments were considered. *See* 20 C.F.R. §404.1545(a)(2); *see also Walton v. Astrue*, 773 F. Supp.2d 742, 747 (N.D. Ohio 2011)(citing *Maziarz v. Sec'y of Heatlh and Human Servs.*, 837 F2d 240, 244 (6th Cir. 1987), for the proposition that error at step two is harmless when ALJ proceeds to subsequent steps of the sequential process).

In considering the degree of limitation claimed by Plaintiff with respect to his gout, the ALJ noted Plaintiff's testimony that he had problems with his knees and feet, "and that gout or arthritis were the suspected cause." However, Plaintiff testified that "he does not take medication for these problems because he already takes too many

medications." (Tr. 19). At a consultative examination on March 19, 2008, Plaintiff reported that he could walk for three quarters of a mile on level terrain without difficulty, even though he stated that he had experienced "a dull ache" for approximately five years "over the top of his feet," that was exacerbated upon "prolonged ambulation." (Tr. 225). Despite this reported ache, Plaintiff admitted he had never sought any medical attention for foot pain, such as physical therapy, injections, or surgery. Nor had Plaintiff tried any self-treatment for his alleged pain, such as orthotics, heating pads or ambulatory aids. (Tr. 19, 225). The examining consultant, Dr. Bailey, found that Plaintiff had a normal gait. (Tr. 19, 227). Plaintiff did not have pedal edema, and had no history of instability or falls. (Tr. 21, 225).

Plaintiff focuses on a handful of medical records to support his claim of painful gout. For example, at a follow-up appointment for treatment of his high blood pressure on June 4, 2008, Dr. Bill noted some pitting edema, which can be a symptom of gout. (Tr. 246). Dr. Bill referred Plaintiff for lab work (which resulted in the single abnormal uric acid result), and recommended that Plaintiff decrease his alcohol consumption. On October 5, 2008, Dr. Bill formally diagnosed gout and recommended treatment through dietary changes. (Tr. 261). Dr. Bill repeated his advice to reduce alcohol intake at a later appointment on February 12, 2009. The record shows that Plaintiff again complained of joint ache in one of his big toes on September 9, 2010. (Tr. 282). However, the last complaint was nine months after the expiration of Plaintiff's insured status. Moreover, the examining physician at that time, Dr. Mueller, felt that gout was "less likely" than some other condition to be the cause of Plaintiff's joint pain, including in his toe. Dr. Mueller prescribed only Tylenol. (Tr. 282-283, 286-287).

Although Plaintiff testified at the hearing that his feet hurt so severely that he was often unable to wear shoes, the ALJ did not find that testimony to be credible in light of the medical evidence as a whole, including Plaintiff's report to Dr. Bailey, and Dr. Bailey's notation that Plaintiff walked one to one and a half miles every day.  (Tr. 21). The credibility issues are discussed at greater length in the context of Plaintiff's third assertion of error.  With respect to the first assertion – that the ALJ committed reversible error by failing to find gout a severe impairment – it is enough to say that the undersigned finds substantial evidence in the record as a whole to support the determination that Plaintiff's gout was non-severe.

A severe impairment is defined as one that significantly impacts an individual's physical or mental ability to perform basic work activities.   20 C.F.R. §404.1521. Plaintiff can be found to be disabled only if he suffered from at least one severe impairment that caused significant limitations for a period lasting 12 months or more. Here, Plaintiff sought almost no treatment at all for his gout, which a physician discovered only in the course of treating Plaintiff's high blood pressure.  Plaintiff fails to identify any ongoing symptoms that his physicians attributed to gout, and treatment was conservative (primarily dietary recommendations, and a suggestion to reduce alcohol intake).  Dr. Bill advised Plaintiff to use over-the-counter ibuprofen or Aleve as needed for any flare-ups (Tr. 247, 261).  In October 2008, Dr. Bill indicated that Plaintiff's uric acid level at 9.0 was "still high, but better" than the previously reported 9.6, and that he would continue to monitor it.  (Tr. 265).  Treatment notes in 2009 indicated no edema, and reflect no complaints of musculoskeletal pain at all.  (Tr. 260, 295).   Thus, the evidence strongly supports the ALJ's conclusion that – whatever the cause of Plaintiff's

7

alleged foot pain and however many months he may have had symptoms– his foot condition did not significantly impact his ability to perform work.

## 2.  Review of Medical Evidence Supports RFC of "Medium" Work

Again relying on the failure of the ALJ to find his gout to be a severe impairment, Plaintiff argues that the ALJ improperly determined that he was able to perform "medium level" work, which requires an individual to be able to stand or walk "a good deal" or alternatively, to sit "most of the time with some pushing and pulling of arm or leg controls," and to occasionally lift and carry up to 50 pounds, and frequently lift or carry 25 pounds. 20 C.F.R. §404.1567(c)(defining medium work, incorporating postural abilities of light work).[1]  Plaintiff concedes that no treating source submitted any RFC opinion on his behalf.  In fact, no treating doctor has ever opined that Plaintiff has any work-related limitations (Tr. 21).  By contrast, one state agency consultant (Dr. Cho) found "no severe impairment," suggesting that Plaintiff has no work-related limitations at all.  (Tr. 21, 251).

Dr. Bailey opined that Plaintiff could perform "at least a mild amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects…and would do best in a dust-free environment."  (Tr. 228).   Plaintiff contends that Dr. Bailey's use of the phrase "mild amount" is inconsistent with the ALJ's RFC determination that he can perform medium work.  However, Plaintiff's argument ignores that Dr. Bailey expressed her opinion in terms of the minimum Plaintiff could do, i.e. "*at least* a mild amount."  (*Id.*, emphasis added).  Dr. Bailey also observed that Plaintiff ambulated with a normal gait, was comfortable in sitting and standing positions, could

---

[1]Plaintiff incorrectly posits that medium work mandates that an individual be "on their feet standing or walking the better part of a day." (Doc. 9 at 4).  As quoted, the definition of medium work allows for sitting most of the time.

forward bend and squat without difficulty, and demonstrated normal range of motion in his extremities and back.  (Tr. 19, 21, 227, 230-231).  As Defendant notes, Dr. Bailey conducted her exam at a time when Plaintiff's hypertension was uncontrolled, but Plaintiff's hypertension was brought into control just a week later, after referral for treatment by his primary care physician.  (Tr. 234).  The ALJ gave Dr. Bailey's opinions only "some weight." (Tr. 21).  However, despite referencing Dr. Bailey's statement that Plaintiff could perform "at least a mild amount" of work-related postural activities, the ALJ did not further explain any implicit inconsistency between medium work and Dr. Bailey's "mild" statement.  (Tr. 19).  The undersigned again finds no reversible error, because the record as a whole supports the ALJ's determination that Plaintiff is capable of performing medium work.  Additionally, although an ALJ must consider every medical source opinion, an ALJ is not legally required to articulate as extensively his reasons for rejecting the opinions of a non-examining consultant, as he is when he rejects the opinion of a treating physician.  *Compare* 20 C.F.R. §404.1527(c)(2) (dictating that "good reasons" be given for the weight given to "your treating source's opinion.").

### 3. Credibility Assessment

In his last assignment of error, Plaintiff complains that the ALJ erred in finding him to be only "partially" credible.  (Tr. 20).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307

9

F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

Plaintiff relies heavily on his strong record of 35 years of employment as an electrician, since prior work record is an important factor in determining credibility.  SSR 96-7p.  However, the ALJ did not find that work history to be dispositive concerning Plaintiff's credibility in this case:

> The claimant did have a good work record up to 2004, [when]…he [could not] do his past relevant work.  However, he has made no effort to retrain himself or look at other types of work.

Plaintiff argues that the ALJ erred by suggesting that Plaintiff's lack of retraining negatively impacted his credibility, since even the ALJ acknowledged that Plaintiff could no longer perform his prior work.  The ALJ's comment reflects no error, but rather, merely an appropriate finding that Plaintiff made no serious attempts to look for other work he could perform, after he became unable to continue as an electrician.[2]  To that extent, his claim that he was disabled from all work (and not just work as an electrician) was not fully credible.

Plaintiff next criticizes the ALJ's reference to the lack of any medical opinions that his is disabled, arguing that the fact that examining physicians have not found him to be disabled "is of no consequence."  (Doc. 9 at 6).  Again, however, the undersigned finds no error in the ALJ's reasoning that Plaintiff's failure to submit any limiting opinions, by any treating physician, reflected negatively on his claim that he is precluded from all

---

[2]Plaintiff testified that he briefly considered applying for work at Home Depot, but "nixed that idea" because he did not believe he could stand on concrete for the time that position would require. (Tr. 34).

work.  The fact that the ultimate determination of disability rests with the Commissioner does not mean that supporting medical opinions are wholly irrelevant.

Plaintiff argues that the ALJ was wrong to highlight Plaintiff's testimony that he never missed a dose of his medication (Tr. 20), and to contrast that with records reflecting that Plaintiff reported on two occasions to different physicians that he had run out of medications – for at least a couple of months.  (*Id.*).  Plaintiff points out that he explained in his testimony that he was "between doctors."  (Tr. 52).  However, the ALJ did not err by pointing out the inconsistency in his testimony on this issue.  Plaintiff testified that Dr. Bills suddenly told him to find a new doctor, and that it took about a month and a half for him to get an appointment with Dr. Mueller.  (Tr. 52-53).  But, while Plaintiff's last visit with Dr. Bill was in September 2009 (Tr. 295), his first visit with Dr. Mueller was not until July 2010 (Tr. 289) – ten months later, not a month and a half.  In his reply memorandum, Plaintiff offers several explanations.  The new explanations do not alter the reasonableness of the ALJ's interpretation, that Plaintiff was not completely truthful, in light of the record as a whole.

Finally, Plaintiff accuses the ALJ of "cherry-picking" evidence concerning his ability to walk long distances, because despite reporting that he could walk three quarters of a mile to one physician, he reported to the same physician that prolonged ambulation or standing exacerbates the pain in his feet.  (Tr. 21, 225).  The mere fact that Plaintiff made both statements does not mean that he could not walk fairly long distances.  In fact, Plaintiff reported to Dr. Bill in 2009 that he walked one to one-and-a-half miles per day (Tr. 21, 260), which he tried to explain away at the hearing as "not true," because it probably "just seemed like a mile and a half."  (Tr. 42).  As pointed out

11

by Defendant, the 2009 treatment notes concerning the lack of edema or complaints of musculoskeletal pain, in combination with Dr. Bill's prescription for over-the-counter ibuprofen or Aleve for occasional flare-ups of toe pain, undermines Plaintiff's testimony that his doctors did not treat his gout more aggressively because he was "on too many medications." (Tr. 19, 45, 50). Plaintiff also reported to Dr. Mueller in 2010 that "he may have to go back to work," expressing concern only about climbing ladders or on roofs because of his lightheadedness from his blood pressure medication. (Tr. 282). Plaintiff's statement to Dr. Mueller suggests that Plaintiff felt capable of working, with some restriction for dizziness, which was in fact included in the ALJ's RFC.   In sum, on the record presented, the ALJ's assessment of credibility is supported by substantial evidence. *See Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

### III.  Conclusion and Recommendation

For the reasons discussed, **IT IS RECOMMENDED THAT:**

1.  The Commissioner's decision to deny Plaintiff DIB benefits be **AFFIRMED;**

2.   As no other matters remain pending, this case be closed.


*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

HAROLD G. FOSSITT,                                   Case No. 1:12-cv-276

        Plaintiff,                                   Spiegel, J.
                                                     Bowman, M.J.

        v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

13